CHIN, Circuit Judge:
I respectfully dissent.
On the second day of trial, after jury selection and just before opening statements, the trial court ruled — off the record — that petitioner-appellant Everett Downs’s twelve-year old brother, Nathaniel, could not remain in the courtroom because of his age. Downs’s mother had no choice but to take Nathaniel home. Downs was deprived of his right to have his family present — his mother for the day and Nathaniel for the entirety of the trial. Nathaniel was deprived of his right to be in the courtroom to support his brother.
Numerous cases have held that the blanket exclusion of family members — including children — from the courtroom in criminal cases is unconstitutional.[1] The *109 Appellate Division, Second Department, ruled in this case, however, that Downs’s Sixth Amendment claim was “unpreserved” for appellate review because his counsel purportedly failed to make a contemporaneous objection. People v. Downs, 34 A.D.3d 596, 825 N.Y.S.2d 103, 104 (2d Dep’t 2006).
The majority holds that this ruling was not an “exorbitant application” of New York law, and that therefore Downs is not entitled to habeas relief. I disagree.
As the majority notes, we have only a “sparse record” of what transpired during the off-the-record conference as the discussion was not transcribed. Maj. Op. at 108. But we do know that as soon as the parties returned to open court and resumed the proceedings on the record, defense counsel addressed the court as follows:
I do want to note for the record that there was a young man who, a family member of the defendant who had been asked by the Court to leave because of his age. He is 12 years old and the Court is indicating that it sets a limit of approximately 16 or 17 years of age. I informed the family of that and I’m sure they will comply. However, I do want to note, for the record, that I believe the young man is a suitable age and that he would not have been an obstruction to the proceedings.
J.A. 74-75 (Trial Tr. 149:20-150:6).
The trial court did not address counsel’s remarks, and it never made any findings on the record. The prosecutor also remained silent. The trial proceeded — with Nathaniel excluded from the courtroom.
Three principal questions are presented: first, whether defense counsel’s words constituted an objection to the trial court’s exclusion of Nathaniel from the trial; second, whether the Appellate Division’s holding that defense counsel’s words did not preserve the claim for appeal was an “exorbitant application” of New York’s contemporaneous objection rule; and, third, in light of the “sparse record” available for appellate review, whether, to the extent there is any doubt about what transpired, Downs should bear the consequences of the lack of a clearer record. I address the three issues in turn.
*110 1. Was There An Objection?
To preserve a claim for review, an objection must be “ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action.” Osborne v. Ohio, 495 U.S. 103, 125, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); accord Cotto v. Herbert, 331 F.3d 217, 242 (2d Cir.2003). We have interpreted New York’s contemporaneous objection rule to require a claim to be “interjected at the fact-finding level in such a manner and at such a time as to fairly apprise the court and the opposing party of the nature and scope of the matter contested.” Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir.1999) (discussing N.Y.Crim. Proc. Law § 470.05(2)) (internal quotation marks omitted).
Here, in my view, defense counsel’s statement was sufficient to put the trial court on notice that Downs was objecting to the exclusion of his brother.
First, defense counsel’s choice of words makes clear that he was objecting. He used the phrase “for the record” not once, but twice — thereby advising the court and the prosecution unequivocally that he was making an objection. There is no ambiguity about the words “for the record.” Indeed, a lawyer makes a statement “for the record” precisely so that there will be a record — for the appeal. As a trial judge, I certainly understood that a lawyer was objecting when she stood up and said “for the record” before expressing disagreement with my ruling.
Second, counsel “amply and timely” brought his concerns to the attention of the trial court. Counsel noted that the court had asked “a family member” to leave because of his age and because the court had a policy of excluding children under the age of 16 or 17. He then expressed his belief that “the young man” was of “a suitable age,” who would not have been “an obstruction to the proceedings.” These words “fairly apprised” the trial court that Downs disagreed with its ruling and was objecting to the court’s application of a blanket policy of excluding children without giving individualized consideration to whether the particular child — Nathaniel—would actually be disruptive. The words were also timely, as defense counsel spoke as soon as the proceedings resumed on the record; the trial court could have taken appropriate corrective action then and there.
Third, the “sequence of events” sufficiently alerted the court and the prosecution that defense counsel was objecting. See Lee v. Kemna, 534 U.S. 362, 377, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (holding “sequence of events” made clear that defense counsel was objecting (quoting Osborne, 495 U.S. at 124, 110 S.Ct. 1691)). The trial court issued its ruling off the record, and defense counsel put his statement on the record as soon as the proceedings resumed on the record. This is what an attorney does to preserve an issue for appellate review.
The majority writes that with these words defense counsel was “arguably acquiesc[ing]” in the order excluding Nathaniel. Maj. Op. at 105. Perhaps. But it is much more likely, in my view, that defense counsel was objecting. If he were merely acquiescing, there would have been no reason for him to say anything at all, and he certainly would not have expressed disagreement “for the record.” As for counsel’s comment to the court that he had “informed the family” and he was “sure they [would] comply,” clearly counsel was saying that while the family did not agree with the court’s order, it would nonetheless comply. This was not at all inconsistent with the intent to preserve the objection. Indeed, as defense counsel’s affidavit to *111 the Appellate Division makes clear, his intent was to object.[2]
In short, I would hold that Downs objected to the exclusion of his brother from the trial.
2. Is the Appellate Division’s Ruling An “Exorbitant Application” of New York Law?
I acknowledge that “[o]ur task is not to determine whether ... [the Appellate Division’s] ruling was correct, but to determine its adequacy to preclude federal habeas review.” Cotto, 331 F.3d at 247. On habeas review, we do not reach questions of federal law “when the state court’s decision rests upon a state-law ground that ‘is independent of the federal question and adequate to support the judgment.’ ” Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769, 1780, 173 L.Ed.2d 701 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In general, a state ground for a decision is adequate where it is based on a state rule that is “firmly established and regularly followed.” Walker v. Martin, — U.S. -, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011) (internal quotation marks omitted). In “exceptional cases,” however, the “exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.” Lee, 534 U.S. at 376, 122 S.Ct. 877.
I agree that, in general, New York’s contemporaneous objection rule is “firmly established and regularly followed.” See Whitley v. Ercole, 642 F.3d 278, 286-87 (2d Cir.2011); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir.2007). Hence, the question is whether this application of a “generally sound rule” was “exorbitant.” I believe it was.
The determination of adequacy rests upon “the statute and caselaw.” Cotto, 331 F.3d at 243. Accordingly, I consider first the plain language of New York’s contemporaneous objection rule and second the caselaw applying it.
a. The Plain Language of § 470.05(2)
New York Criminal Procedure Law § 470.05(2) provides that:
For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an “exception” but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court’s ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.
N.Y.Crim. Proc. Law § 470.05(2) (McKinney 2009). Thus, an objecting party preserves an objection if he: (1) made his position regarding the ruling known to the court; (2) made a “protest” and the trial court “expressly decided the question *112 raised on appeal”; or (3) “without success has either expressly or impliedly sought or requested a particular ruling.” Id. The rule does not require more of a party than “impliedly” requesting a particular ruling, nor, indeed, does it require an “actual protest.” Id. See Cotto, 331 F.3d at 247 (applying “substantial compliance” analysis).
Here, Downs’s counsel’s statement fell within at least the first and third alternatives. He stated his “position” almost immediately, as soon as the proceedings resumed on the record following the trial court’s off-the-record exclusion order. He certainly “impliedly” — if not “expressly”— sought a particular ruling by suggesting that the trial court permit Nathaniel to remain. As this occurred prior to opening statements and counsel stated that he had just then notified the family, the trial court still had the “opportunity of effectively changing” its ruling. See N.Y.Crim. Proc. Law § 470.05(2). Accordingly, even on this limited record, it is apparent that Downs’s counsel complied with the plain language of § 470.05(2).
b. The Caselaw Interpreting § 470.05(2)
The caselaw supports the conclusion that the Appellate Division’s ruling that Downs’s claim was “unpreserved” is an “exorbitant application” of New York’s contemporaneous objection rule.
The phrase “exorbitant application” was first used in this context by the Supreme Court in Lee v. Kemna, 534 U.S. at 376, 122 S.Ct. 877. An “exorbitant” application of a state rule is one that is outside the intended scope of the law or is otherwise excessive, see 5 Oxford English Dictionary 549 (2d ed.1989); or is “persnickety,” i.e., overly fussy or particular or formalistic, see Walker, 131 S.Ct. at 1128 n. 4 (“This Court held inadequate to bar federal review a state court’s persnickety application of a rule.... ”); or is an “arid ‘ritual ... [that] would further no perceivable state interest,’ ” Richardson, 497 F.3d at 218 (quoting Lee, 534 U.S. at 375, 122 S.Ct. 877).
To determine whether a particular application of a state rule is “exorbitant,” we look to three “guideposts,” as we explained in Cotto:
(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court’s decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had “substantially complied” with the rule given “the realities of trial,” and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.
Cotto, 331 F.3d at 239-40 (quoting Lee, 534 U.S. at 381-85, 122 S.Ct. 877).
In my view, under all three guideposts, the Appellate Division’s application of the contemporaneous rule was exorbitant. First, the trial court did not rely on any failure on the part of Downs’s counsel to object, and perfect compliance by counsel with § 470.05(2) would not have changed the trial court’s decision. The trial court had a blanket policy of excluding children, and it invoked its policy here on its own initiative. When Downs’s counsel raised the issue, his remarks elicited no response from the court whatsoever. Second, while state caselaw does demand compliance with the contemporaneous objection rule in general, as discussed below, there certainly is some latitude in the form the objection must take, particularly in the context of courtroom exclusions. Third, Downs’s counsel “substantially complied” with the rule, particularly in light of “the realities *113 of trial.” As soon as the proceedings resumed on the record, defense counsel put the trial court’s order on the record and expressed his disagreement. Counsel made his disagreement known to the court, “for the record,” without being disrespectful. Given the “realities” that the trial court had a blanket policy and excluded Nathaniel on its own initiative, Downs’s counsel took sufficient action.
The question arises, of course, as to what more defense counsel could have done. I suppose counsel could have added the words “I object” or “I ask the court to reconsider,” or he could have referred specifically to the Sixth Amendment. These words, however, would have made no difference, as counsel had already made the point with his “for the record” statements. “[Tjhere is no reason to believe that the trial court would have changed its mind.” Cotto, 331 F.3d at 242-43. Further objection would have been only ritualistic and would not have furthered any legitimate state interest, as the purposes of the contemporaneous objection rule were fully met by what counsel had already said.
The eases applying § 470.05(2) show that the courts are flexible as to the form of an objection. The key is whether counsel’s actions or words advance the state interest underlying the rule: to ensure that parties draw the trial court’s attention to potential error while there is still an opportunity to address it. Cotto, 331 F.3d at 245. If counsel’s statement or actions serve that function, the claim is deemed preserved.
In People v. Martinez, for example, a sarcastic question from defense counsel, “while not in proper form,” was deemed sufficient to preserve for appeal the issue of excluding defendant’s family members from the courtroom. 172 A.D.2d 428, 429, 568 N.Y.S.2d 940 (1st Dep’t 1991). In People v. Richardson, defense counsel’s objection at trial to the exclusion of defendant’s non-disruptive children, without specific reference to the right to a public trial, was also held to be sufficient. 296 A.D.2d 334, 334, 744 N.Y.S.2d 407 (1st Dep’t 2002); see also People v. Spence, 239 A.D.2d 218, 219, 657 N.Y.S.2d 645 (1st Dep’t 1997) (holding that despite defense counsel’s failure to specifically state his objection on Sixth Amendment grounds, “objection” in form of comment that defendant’s wife was entitled to sit for whole trial was sufficient to preserve issue).
Even an attorney’s identification of a family member present in the courtroom who desired to remain, prior to the court’s exclusion order, has been held sufficient to place a court on “express notice” of a public trial claim and preserve it for review. People v. Bass, 259 A.D.2d 419, 420, 687 N.Y.S.2d 148 (1st Dep’t 1999). In People v. Glover, while the First Department ruled that an objection to an exclusion order was unpreserved because the defendant failed to “specifically identify” his brother and sister, 256 A.D.2d 36, 36, 683 N.Y.S.2d 4 (1st Dep’t 1998), the Court of Appeals reversed, ordering a new trial on the grounds that the brother and sister had been improperly excluded from the courtroom, 93 N.Y.2d 1010, 697 N.Y.S.2d 551, 719 N.E.2d 910 (1999).[3]
*114 Here, Downs’s counsel did more than defendant’s counsel did in Martinez, where counsel merely asked a sarcastic question in response to the trial court’s closure order, conduct that the First Department held to be sufficient to preserve the issue for review. 172 A.D.2d at 429, 568 N.Y.S.2d 940. Downs’s counsel specifically identified Nathaniel as a “family member,” and represented that Nathaniel would not be a disruption to the proceedings. Counsel left no doubt that he was drawing attention to a possible Sixth Amendment violation.
For all these reasons, I believe that this case falls within the “small category of cases” in which the state ground is inadequate to preclude our review of the constitutional claim. Lee, 534 U.S. at 381, 122 S.Ct. 877. It was an “exorbitant application” for the Appellate Division to hold that counsel’s words of protest did not constitute an objection.
3. Who Bore the Burden of Making A Clearer Record?
The district court held that Downs’s Sixth Amendment claim was unreviewable because of the insufficiency of the record. The district court squarely placed the burden of making a record on Downs, as it held that petitioner “[bore] the responsibility for generating a record that makes meaningful post-conviction review feasible.” Downs v. Lape, No. 08 Civ. 92(RJD), 2009 WL 3698134, at *4 (E.D.N.Y. Oct. 30, 2009).
The majority acquiesces in this conclusion. It notes that “[t]he record pertaining to the state trial judge’s request that [the brother] leave the courtroom is, to say the least, poorly developed.” Maj. Op. at 104. It observes that defense counsel “failed specifically to ask that the judge give reasons for the exclusion or to solicit comment from the judge or the prosecutor, neither of whom interrupted or responded to counsel’s statement.” Maj. Op. at 100. The majority seems to agree with the district court that it was up to Downs and his counsel to create a record that was free from all ambiguity, and that Downs must now bear the consequences of the lack of a pristine record. In my view, if there is any doubt — and I believe there is very little — any ambiguity should be resolved in favor of Downs.
First, as a general matter, § 295 of the New York Judiciary Law requires “complete stenographic notes of each ruling or decision of the presiding judge.” NY. Jud. Law § 295 (McKinney 2005) (emphasis added).[4] See also ABA Standards for *115 Criminal Justice, Standard 6-1.7 (3d ed.2000) (“The trial judge has a duty to see that the reporter makes a true, complete, and accurate record of all proceedings.”). The trial court’s ruling excluding Nathaniel from the trial should have been transcribed. While a defendant must show that he has been prejudiced by the absence of a stenographic record to obtain reversal of a conviction, see People v. Harrison, 85 N.Y.2d at 796, 628 N.Y.S.2d 939, 652 N.E.2d 638,[5] Downs surely would be prejudiced if he is deemed to have forfeited his right to post-conviction review because of the absence of a more complete record.
Second, in the Sixth Amendment context in particular, the trial court itself has an obligation to make a proper record. In Waller v. Georgia, the Supreme Court held that a trial court may not close a court proceeding unless it concludes, based on specific findings, that closure is justified by an “overriding interest,” the closure is no broader than necessary, and reasonable alternatives to closure have been considered. 467 U.S. 39, 45, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (internal citations omitted). A trial may not be closed unless the trial court makes “findings” specific enough to permit a reviewing court to determine whether the closure order was properly entered. Id. at 45, 104 S.Ct. 2210.
Likewise, the New York Court of Appeals has held that, pursuant to the Sixth Amendment, a trial court’s reasons for excluding a defendant’s family members from the courtroom “must be ‘demonstrated and documented.’ ” Nieves, 90 N.Y.2d at 429-30, 660 N.Y.S.2d 858, 683 N.E.2d 764 (quoting People v. Kin Kan, 78 N.Y.2d 54, 57, 571 N.Y.S.2d 436, 574 N.E.2d 1042 (1991)). So too, in Martinez, the First Department noted that the record was silent as to any factual findings or overriding interest to justify the closure, and determined that the burden was on the trial court to create a record when such an important right was being foreclosed. 172 A.D.2d at 429-30, 568 N.Y.S.2d 940.
Here, although the record is “sparse,” what exists makes clear that the exclusion order rested upon the trial court’s policy of not permitting members of the public under “16 or 17 years of age” to attend trial. Defense counsel’s statement that Nathaniel “would not have been an obstruction to the proceedings” and the observation in his affidavit to the Appellate Division that the court ordered Nathaniel out of the courtroom “solely because of his age,” J.A. 63, make clear that the court’s policy was a blanket one and that Nathaniel was not given individual consideration. Moreover, the available record shows that the trial court ordered Nathaniel excluded on its own initiative; the prosecution had not requested that Nathaniel be removed. Downs’s counsel challenged the exclusion order by making his statement “for the record.” Yet, the trial court remained silent — it did not correct anything that counsel said, nor did it make the individualized findings required by Waller. Likewise, the prosecution did nothing, when it should have reminded the trial court of its duty to make findings sufficient to justify exclusion of Nathaniel.
In these circumstances, it was the trial court’s burden to make findings sufficient to justify its self-initiated closure of the courtroom to Nathaniel.[6] Yet, it made no *116 findings at all. As the district court noted below, “[t]his record ... would almost automatically fail Waller, for no overriding interest has been identified, the court’s consideration of alternatives is not evident on the record, and of course there are no findings.” Downs, 2009 WL 3698134, at *4 (emphasis added).
In light of all the circumstances, to the extent there is any ambiguity in the record, that ambiguity should not operate to deprive Downs of his right to habeas review.

CONCLUSION

Downs has suffered the loss of an important constitutional right solely on the grounds the claim was “unpreserved.” Such an important right should not be deemed forfeited, however, merely because the magic words “I object” were not woven into what was already clearly an objection. The Appellate Division’s conclusion to the contrary was indeed a “persnickety” elevation of form over substance. Accordingly, I would reverse the judgment of the district court denying the petition for a writ of habeas corpus.

. See, e.g., English v. Artuz, 164 F.3d 105, 108-10 (2d Cir.1998) (affirming grant of writ for petition of habeas corpus based upon par *109 tial courtroom closure excluding defendant's family during witness testimony); Guzman v. Scully, 80 F.3d 772, 775-77 (2d Cir.1996) (reversing denial of writ where defendant's family and friends excluded during witness testimony); Vidal v. Williams, 31 F.3d 67, 69 (2d Cir.1994) (reversing denial of writ where courtroom closed to public, including defendant’s parents, during witness testimony); United States v. Garland, 364 F.2d 487, 489 (2d Cir.1966) (holding exclusion of defendant's minor child from trial could be deemed violation of public trial right); People v. Gutierez, 86 N.Y.2d 817, 818, 633 N.Y.S.2d 470, 657 N.E.2d 491 (1995) (reversing Appellate Division and ordering new trial where exclusion of defendant’s “close family members was broader than constitutionally tolerable”); People v. Richardson, 296 A.D.2d 334, 334, 744 N.Y.S.2d 407 (1st Dep’t 2002) (holding trial court's exclusion of defendant’s nondisruptive children, ages eight and nine, violated public trial right); People v. James, 229 A.D.2d 315, 315-16, 645 N.Y.S.2d 300 (1st Dep't 1996) (holding trial court’s exclusion of defendant’s eight-year old son and friend from courtroom denied defendant his constitutional right to public trial); People v. Miller, 224 A.D.2d 639, 639, 639 N.Y.S.2d 50 (2d Dep't 1996) (holding trial court policy of excluding all children under 12 violated defendant’s public trial right). Indeed, an intentional, unjustified abrogation of a defendant’s public trial right under the Sixth Amendment is structural error, and thus inherently prejudicial. Arizona v. Fulminante, 499 U.S. 279, 294-95, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citing Waller v. Georgia, 467 U.S. 39, 49, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)).

. Counsel’s affidavit states: "As the trial transcript reflects, I objected to the Court’s order to remove Nathaniel Clarke from the Courtroom during the trial....” J.A. 63 (Aff. of John Scarpa, sworn to 7/25/05, ¶ 3).

. Cf. Cotto, 331 F.3d at 241-47 (holding that New York Court of Appeals’s ruling that defendant’s objection to bar on cross-examination was unpreserved was "inadequate,” even though defense counsel did not specifically object to trial court’s ruling, where counsel had earlier stated: "to not allow me to cross-examine Mr. Echevarria on any or all of his background ... is really totally completely unfair”); Garcia v. Lewis, 188 F.3d 71, 74, 80 (2d Cir.1999) (holding objection was not preserved where defense counsel merely asked for "clarification” as to whether trial court’s order excluding all but defendant’s "close rel *114 atives” from the courtroom extended to his mother’s "companion”); People v. Nieves, 90 N.Y.2d 426, 432 n. *, 660 N.Y.S.2d 858, 683 N.E.2d 764 (1997) (holding objection preserved given that after defendant objected to the People’s application to close the courtroom, trial court "expressly considered” whether defendant’s children could remain and specifically ruled upon that possibility).

. Section 295 provides: "Each stenographer ... shall take complete stenographic notes of each ruling or decision of the presiding judge, and when the trial is by jury each and every remark or comment of such judge during the trial, when requested so to do by either party, together with each and every exception taken to any such ruling, decision, remark or comment by or on behalf of any party to the action.” N.Y. Jud. Law § 295 (McKinney 2005). As the language suggests, while a party must request the transcription of a "remark or comment” of the presiding judge, no such request is necessary to trigger the obligation to transcribe a "ruling or decision” of the judge. See People v. Harrison, 85 N.Y.2d 794, 796, 628 N.Y.S.2d 939, 652 N.E.2d 638 (1995) (distinguishing between full and mandatory recordation of each judge's “ruling or decision” and party-initiated recordation of judicial "remarks and comments,” pursuant to N.Y. Jud. Law § 295); 28 N.Y. Jur.2d Courts and Judges § 500 (2010) (same).

. A defendant is not prejudiced if the record can be reconstructed. Harrison, 85 N.Y.2d at 796, 628 N.Y.S.2d 939, 652 N.E.2d 638.

. Because a "presumption of openness” arises under the Sixth Amendment, 'Waller, 467 U.S. at 45, 104 S.Ct. 2210; Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty., 464 *116 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), where a court closes a courtroom on its own initiative, it follows that the court is obliged to articulate an interest sufficient to override the presumption and to make "findings specific enough that a reviewing court can determine whether the closure order was properly entered.” Press-Enter. Co., 464 U.S. at 510, 104 S.Ct. 819.